IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUNEISA SLOWE STOKES,  Plaintiff, | : : : | CIVIL ACTION |
| v. | : : | |
| SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY,  Defendant. | : : : | NO. 15-2719 |

MEMORANDUM ORDER

AND NOW, this 28th day of August 2015, upon consideration of defendant's Motion to Dismiss for Failure to State a Claim (Doc. No. 5), plaintiff's response in opposition thereto (Doc. No. 6), and defendant's reply (Doc. No. 9), it is hereby ORDERED that the motion is GRANTED. The complaint (Doc. No. 1) is DISMISSED without prejudice. Plaintiff may file an amended complaint curing the deficiencies outlined herein within 21 days of entry of this Order.

Plaintiff Juneisa Slowe Stokes brings this action for retaliatory discharge pursuant to the Federal Railroad Safety Act (FRSA), 49 U.S.C. § 20109. (Compl. ¶ 5, Doc. No. 1). Plaintiff alleges that she was a former employee of defendant Southeastern Pennsylvania Transportation Authority (SEPTA) and was fired in retaliation for her refusal to attend a mandatory medical evaluation, though she notified SEPTA prior to the evaluation that she was unable to attend due to postpartum medical restrictions documented by her physician. (Compl. ¶¶ 8–11.) Defendant SEPTA moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that (1) plaintiff's claims were barred by a release she signed in early 2015; (2) plaintiff may not bring a FRSA claim based on retaliation for following a doctor's orders where the underlying injury is not work-related; (3) plaintiff's postpartum restrictions and consequent refusal to report to a

medical evaluation do not fall within FRSA's prohibition on retaliation against an employee for refusal to perform work in unsafe conditions; and (4) plaintiff's alternative theory that SEPTA's actions were in retaliation for a 2012 on-the-job wrist injury is inadequately pled. (Def.'s Mem. Supp. Mot. to Dismiss, Doc. No. 5.) Plaintiff filed a response to the motion (Doc. No. 6) and defendant filed a reply brief (Doc. No. 8). We conclude that plaintiff has failed to plead sufficient facts to show that her refusal to attend the mandatory evaluation was precipitated by the kind of risk encompassed by 49 U.S.C. § 20109(b) and that her pleading in the alternative based on the wrist injury is inadequate to survive a motion to dismiss.

   I.   Background

On October 21, 2012, plaintiff injured her right hand while performing her job duties for SEPTA. (Compl. ¶ 11a.) While out of work recovering from her injury, she became pregnant. (Compl. ¶ 11b.) Plaintiff informed SEPTA of her pregnancy in May and June of 2013. (Compl. ¶ 11c.) On August 13, 2013, plaintiff received a restriction note from her treating physician for the pregnancy indicating that plaintiff would be able to return to full duty on December 4, 2013. (Compl. ¶ 11d.) On August 22, 2013, plaintiff was cleared by her orthopedic hand doctor to return to work. (Compl. ¶ 11e.) Plaintiff received another work restriction letter from her treating OB/GYN on September 17, 2013, imposing restrictions until her anticipated delivery date in October. (Compl. ¶ 11f.) Given the restrictions imposed by her pregnancy physician, SEPTA determined that plaintiff was unable to return to duty in any capacity. (Compl. ¶ 11g.) Plaintiff gave birth on October 9, 2013 by Caesarean section. (Compl. ¶ 11h.) While plaintiff was recovering at home, on October 15, 2013, plaintiff's home nurse noticed swelling in her left leg and indicated concern over the potential presence of deep vein thrombosis. (Compl. ¶ 11i.) Both

immediately following the birth and on October 15, 2013, plaintiff was "informed to significantly limit her activity for eight weeks post delivery." (Compl. ¶ 11j.)

On October 17, 2013, SEPTA notified plaintiff that she was required to report to SEPTA's medical department on October 31, 2013 for an evaluation. (Compl. ¶ 11k.) In response, plaintiff "notified SEPTA's staff and supervisors of her current medical restrictions, including the need for limited activity" and "again" provided documentation of her medical restrictions to SEPTA. (Compl. ¶ 11l.) SEPTA did not reschedule the October 31, 2013 evaluation. (Compl. ¶ 13.) On October 28, 2013, a representative of SEPTA informed plaintiff that she would be discharged if she failed to attend the evaluation as scheduled. (Compl. ¶ 17d.) Plaintiff ultimately did not attend the October 31, 2013 evaluation "due to her concerns of traveling and having to undergo extensive medical and administrative evaluation." (Compl. ¶ 11m.) Plaintiff alleges that "[h]er decision was based not only on her medical restrictions previously provided but also her physical condition that date and her concern that travel and her time at the SEPTA facility would cause her significant bodily harm." (Id.) Also on October 31, 2013, a representative of SEPTA sought records from plaintiff's treating OB/GYN related to her prior 2012 hand injury. (Compl. ¶ 17e.) On November 1, 2013, plaintiff was discharged for failing to attend the medical evaluation. (Compl. ¶ 17a.)

II. Legal standard

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court conducts a two-part analysis. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). "First, the factual and legal elements of a claim should be separated." Id. The court should disregard any legal conclusions but accept all well-pleaded factual allegations as true for purposes of the motion. Id. at 210–11 (citing Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009)). Importantly,

3

"legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness." Bryant v. Vessell, No. 09-5337, 2009 WL 4510129, at *1 (D.N.J. Nov. 30, 2009) (citing Nice Sys., Ltd. Sec. Litig., 135 F.Supp.2d 551, 565 (D.N.J.2001)). Next, the court determines whether the factual matter in the complaint "state[s] a claim to relief that is plausible on its face." Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "[A] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Rather, a plaintiff need only allege "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element" of their claim. Id. at 234 (citing Twombly, 550 U.S. at 556).

III. Discussion

The FRSA is intended "to promote safety in every area of railroad operations." 49 U.S.C. § 20101. To that end, in 2007 Congress substantially amended the law to provide railroad employees significant protections from retaliation due to whistleblowing or other acts furthering railroad safety. See Araujo v. New Jersey Transit Rail Operations, Inc., 708 F.3d 152, 156–57 (3d Cir. 2013); 49 U.S.C. § 20109. The statute provides a number of specific protected activities for which a railroad employee may not be disciplined. Id. at 157. As is relevant here, the FRSA protects from discipline an employee who notifies an employer of a work-related injury, § 20109(a)(4), who refuses to work when confronted with a hazardous safety condition, § 20109(b), or who follows the orders or treatment plan of a physician, § 20109(c)(2).

1. Plaintiff's claims based on her pregnancy and postpartum recovery

Because plaintiff's complaint is not completely clear as to which statutory subsection it relies upon in seeking relief, we will consider each of the relevant provisions. Section 20109(a)(4) by its terms applies only to a "work-related personal injury or work-related illness," which plaintiff's pregnancy clearly is not. Section 20109(c)(2) has similarly been recently interpreted by the Third Circuit to apply only to the orders or treatment plan of a physician resulting from a work-related injury. Port Auth. Trans-Hudson Corp. v. Sec'y, U.S. Dep't of Labor, 776 F.3d 157 (3d Cir. 2015). Therefore, plaintiff's retaliation claim based on her pregnancy could only arise under § 20109(b), which provides:

> (1) A railroad carrier engaged in interstate or foreign commerce, or an officer or employee of such a railroad carrier, shall not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee for--
>> (A) reporting, in good faith, a hazardous safety or security condition;
>> (B) refusing to work when confronted by a hazardous safety or security condition related to the performance of the employee's duties, if the conditions described in paragraph (2) exist; or
>> (C) refusing to authorize the use of any safety-related equipment, track, or structures, if the employee is responsible for the inspection or repair of the equipment, track, or structures, when the employee believes that the equipment, track, or structures are in a hazardous safety or security condition, if the conditions described in paragraph (2) exist.
> (2) A refusal is protected under paragraph (1)(B) and (C) if--
>> (A) the refusal is made in good faith and no reasonable alternative to the refusal is available to the employee;
>> (B) a reasonable individual in the circumstances then confronting the employee would conclude that--
>>> (i) the hazardous condition presents an *imminent danger of death or serious injury*; and
>>> (ii) the urgency of the situation does not allow sufficient time to eliminate the danger without such

5

> refusal; and
> (C) the employee, where possible, has notified the railroad carrier of the existence of the hazardous condition and the intention not to perform further work, or not to authorize the use of the hazardous equipment, track, or structures, unless the condition is corrected immediately or the equipment, track, or structures are repaired properly or replaced.

(emphasis added). We conclude based on the plain language of the statute that plaintiff has failed to allege sufficient facts to establish that "a reasonable individual in the circumstances confronting the employee would conclude that the hazardous condition presents an imminent danger of death or serious injury," 49 U.S.C. § 20109(b)(2)(B)(i).

Though plaintiff's complaint contains allegations mirroring the language of the statute, "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. In terms of actual facts, plaintiff has failed to allege that she would have experienced an imminent danger of death or serious injury had she attended the medical evaluation. The only facts in the complaint describing the risk are that plaintiff was "informed" (by an unnamed person) "to significantly limit her activity for eight weeks post delivery." (Compl. ¶ 11j.) She alleges that her leg swelled and that a nurse may have suspected deep vein thrombosis, but does not allege a confirmed diagnosis or any specific risk presented by the condition that would prevent her from attending a medical evaluation. (Compl. ¶ 11i.) Finally, she alleges that her decision not to attend the medical evaluation was based on not only her medical restrictions but also "her physical condition that date and her concern that travel and her time at the SEPTA facility would cause her significant bodily harm." (Compl. ¶ 11m.) These allegations do not rise to the level of an imminent danger of death or serious injury. Plaintiff fails to allege what potential injury she could have sustained by attending the medical evaluation. Plaintiff states only that she was instructed by

someone, two weeks prior to the appointment, to limit her physical activity, and that she felt subjectively that there was a risk of some unnamed harm if she attended the evaluation. The complaint does not even reveal whether the person who instructed plaintiff to limit her physical activity was a doctor or other medical professional. The statute requires that the situation be evaluated from the perspective of a "reasonable individual in the circumstances," § 20109(b)(2)(B), and a reasonable individual in plaintiff's circumstances, based on the facts alleged, would not conclude that attending a medical evaluation would place them in imminent danger of death or serious injury. Therefore, plaintiff has failed to state a claim for retaliation based on her failure to attend the medical evaluation on October 31, 2013.

2. Plaintiff's alternative pleading based on the hand injury

Plaintiff's complaint contains the conclusory statement that "[i]f SEPTA advocates that the Plaintiffs termination was related to Plaintiffs October 2012 [hand injury], Plaintiff reserves the right to argue such termination also violates the Federal Railroad Safety Act." (Compl. ¶ 20.) To the extent that such a conclusory pleading even qualifies as a claim, it is woefully inadequate to survive a motion to dismiss. Plaintiff speculates in her opposition that SEPTA's actions in seeking records from her OB/GYN for a period prior to her pregnancy suggest retaliatory motive (Pl.'s Mem. Opp. 14–15). The Court does not see why this would be the case, and in any event plaintiff fails to provide any factual allegations in support of her broadly-construed claim regarding her hand injury. Therefore, to the extent that this argument constitutes a claim, it is dismissed.

IV. Conclusion

For the above-stated reasons, the Court concludes that plaintiff has failed to state a claim for retaliation under the FRSA. Because it is unclear at this stage whether plaintiff may be able to

state a claim, and leave to amend pleadings "should be liberally granted," <u>Long v. Wilson</u>, 393 F.3d 390, 400 (3d Cir. 2004), plaintiff may file an amended complaint within 21 days of entry of this Order.

              BY THE COURT:

              /s/ Legrome D. Davis

              Legrome D. Davis, J.