IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUNEISA SLOWE STOKES, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SOUTHEASTERN PENNSYLVANIA | : | NO. 15-2719 |
| TRANSPORTATION AUTHORITY, | : | |
|     Defendant. | : | |

MEMORANDUM ORDER

AND NOW, this 18th day of November 2015, upon consideration of defendant's Motion to Dismiss for Failure to State a Claim (Doc. No. 15), plaintiff's response in opposition thereto (Doc. No. 16), and defendant's reply (Doc. No. 19), it is hereby ORDERED that the motion is GRANTED. Because the amended complaint contains the same deficiencies as the original complaint and further amendment would be futile, the amended complaint is DISMISSED with prejudice.

I.  Procedural Background

Plaintiff Juneisa Slowe Stokes brings this action pursuant to the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109, for retaliatory discharge. (Am. Compl. ¶ 5, Doc. No. 13.) Plaintiff's original complaint (Doc. No. 1) was dismissed by this Court's order, and plaintiff was given leave to file an amended complaint. (Doc. No. 10.) Plaintiff filed an amended complaint on September 17, 2015, with the same or substantially similar allegations as her original complaint. (Am. Compl.) Plaintiff alleges that she was an employee of defendant Southeastern Pennsylvania Transportation Authority ("SEPTA") until November 1, 2013, when she was fired in retaliation for her refusal to attend a mandatory medical evaluation scheduled for October 31, 2013. (Am.

Compl. ¶¶ 8–11, 27.) Plaintiff alleges that she was unable to attend the evaluation due to postpartum medical restrictions (Am. Compl. ¶ 20) and that she notified SEPTA in advance, seeking to cancel or reschedule the evaluation. (Am. Compl. ¶ 22.) Defendant SEPTA moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that (1) plaintiff's claims were barred by a release she signed in early 2015; (2) plaintiff may not bring a FRSA claim based on retaliation for following a doctor's orders where the underlying injury is not work-related; and (3) plaintiff did not engage in protected refusal to work because she was not facing imminent danger of serious bodily harm from a hazardous safety or security condition related to the performance of her duties. (Def.'s Mem. Supp. Mot. to Dismiss, 1, Doc. No. 15.) Plaintiff filed a response to the motion (Doc. No. 16) and defendant filed a reply brief (Doc. No. 19). We conclude that plaintiff has again failed to plead sufficient facts to show that her refusal to attend the mandatory evaluation was precipitated by the type of risk protected by 49 U.S.C. § 20109(b).

II. Factual Background

The factual background was provided in this Court's previous order dismissing plaintiff's original complaint (Doc. No. 10), and we need not repeat it here. The background provided herein solely addresses the modifications found in plaintiff's amended complaint.

As amended, plaintiff's complaint alleges that, on October 15, 2013, approximately one week after plaintiff gave birth, home healthcare nurse Catherine Willie, R.N. visited the plaintiff. (Am. Compl. ¶ 12.) Ms. Willie told plaintiff that she "may have a Deep Vein Thrombosis and that she needed to stay on bed rest and limit her activities significantly and should leave the home to go for medical treatment." (Am. Compl. ¶ 16.) Ms. Willie informed plaintiff that Deep Vein Thrombosis ("DVT") "put her at risk for having a blood clot break free and go to her lungs and that

2

could cause serious injury and death." (Am. Compl. ¶ 18.)

On October 17, 2013, SEPTA notified plaintiff that she was required to report to SEPTA's medical department on October 31, 2013 for an evaluation. (Am. Compl. ¶ 11k.) Plaintiff alleges that she did not attend the appointment "because it was against the medical instructions she was given; she did not feel well and because she was in fear of having DVT breaking free and causing her serious harm or death." (Am. Compl. ¶ 20.) On November 1, 2013, plaintiff was discharged for failing to attend the medical evaluation. (Am. Compl. ¶ 27a.)

III. Legal standard

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court conducts a two-part analysis. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). "First, the factual and legal elements of a claim should be separated." Id. The court should disregard any legal conclusions but accept all well-pleaded factual allegations as true for purposes of the motion. Id. at 210–11 (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Next, the court determines whether the factual matter in the complaint "state[s] a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Dismissal for failure to state a claim is proper if the complaint lacks sufficient factual content to "plausibly give rise to an entitlement to relief," Id. at 679, or if "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," Twombly, 550 U.S. at 558.

IV. Discussion

3

As this Court previously held (Doc. No. 10), plaintiff's retaliation claim based on complications from her pregnancy could only arise under 49 U.S.C. § 20109(b), and nothing in plaintiff's amended complaint gives reason to consider otherwise. Section 20109(b) provides:

> (1) A railroad carrier engaged in interstate or foreign commerce, or an officer or employee of such a railroad carrier, shall not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee for--
> > (A) reporting, in good faith, a hazardous safety or security condition;
> > (B) refusing to work when confronted by a hazardous safety or security condition related to the performance of the employee's duties, if the conditions described in paragraph (2) exist; or
> > (C) refusing to authorize the use of any safety-related equipment, track, or structures, if the employee is responsible for the inspection or repair of the equipment, track, or structures, when the employee believes that the equipment, track, or structures are in a hazardous safety or security condition, if the conditions described in paragraph (2) exist.
> (2) A refusal is protected under paragraph (1)(B) and (C) if--
> > (A) the refusal is made in good faith and no reasonable alternative to the refusal is available to the employee;
> > (B) a reasonable individual in the circumstances then confronting the employee would conclude that--
> > > (i) the hazardous condition presents an imminent danger of death or serious injury; and
> > > (ii) the urgency of the situation does not allow sufficient time to eliminate the danger without such refusal; and
> > (C) the employee, where possible, has notified the railroad carrier of the existence of the hazardous condition and the intention not to perform further work, or not to authorize the use of the hazardous equipment, track, or structures, unless the condition is corrected immediately or the equipment, track, or structures are repaired properly or replaced.

We conclude, based on the plain language of the statute, that plaintiff has failed to allege sufficient facts to establish that she could plausibly be entitled to relief under 49 U.S.C. § 20109(b).

The FRSA is intended "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. This purpose is evident in the construction of 49 U.S.C. § 20109(b). For example, 49 U.S.C. § 20109(b)(1)(B) requires that a hazardous condition be related to the performance of the employee's duties, and 49 U.S.C. § 20109(b)(1)(C) relates to the employee's responsibility for the inspection and repair of equipment, track, and structures. See Port Auth. Trans-Hudson Corp. v. Sec'y, U.S. Dep't of Labor (Bala), 776 F.3d 157, 161 (3d Cir. 2015) ("Subsection[ ] . . . (b) of § 20109 provid[es] . . . protections to employees who . . . notify a railroad or the Secretary of Transportation about 'work related' injuries or illnesses, and report and/or refuse to work in hazardous conditions."). Although the Bala court analyzed § 20109(c)(2), it held in dicta that § 20109(b)(1)(A) "must be read as having at least some work-related limitation" in order to accomplish the purposes set out in 49 U.S.C. § 20101. Id. at 165–66. Whether through statutory construction or judicial interpretation, the FRSA clearly does not protect every refusal to work. Rather, § 20109(b) is an anti-retaliation measure used to protect specified work refusals that promote safe railroad operations. See, e.g., Hunter v. CSX Transp., Inc., 2014-FRS-00128, 2015-FRS-00010, at *7–8, ALJ Order Granting Respondent's Motion to Dismiss (Dep't of Labor Mar. 24, 2015) (evaluating Port Authority Trans-Hudson Corp. and holding that, "even had Complainant alleged sufficient facts to state a Section 20109(b) claim in any of his complaints, his personal, non-work related illness does not constitute a hazardous condition under the Act").

In the present case, plaintiff does not allege any facts that could plausibly yield relief under the FRSA. Plaintiff was terminated because she failed to attend a mandatory medical evaluation. (Am. Compl. ¶ 27a.) She did not attend the evaluation because she had "concerns of traveling and

5

having to undergo extensive medical and administrative evaluation" (Am. Compl. ¶ 11m), along with her "fear of having the DVT breaking free and causing her serious harm or death." (Am. Compl. ¶ 20.) This is not the type of hazard that the FRSA is designed to prevent because it is not related to maintaining safe railroad operations and reducing railroad accidents. 49 U.S.C. § 20101. Plaintiff was not reporting a "hazardous safety or security condition." § 20109(b)(1)(A). Nor was plaintiff "confronted with a hazardous safety or security condition related to the performance of [her] duties." 49 U.S.C. § 20109(b)(1)(B).

V. Conclusion

For the reasons stated above, the Court concludes that plaintiff has failed to state a claim for retaliation under the FRSA. Plaintiff's complaint is DISMISSED with prejudice. Because there is no plausible basis for plaintiff to be entitled to relief under 49 U.S.C. § 20109 *et seq.*, plaintiff's amended complaint is dismissed with prejudice and plaintiff will not be granted leave to amend the complaint. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008) ("[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile.").

The Clerk of Court shall mark this matter as closed for statistical purposes.

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.